# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY MCGRIFF,        :
     **Plaintiff**         :        **No. 1:22-cv-01547**
                       :
       **v.**           :        **(Judge Rambo)**
                       :
SUPERINTENDENT KAUFFMAN,  :
<u>et</u> <u>al.</u>,                   :
     **Defendants**      :

## <u>MEMORANDUM</u>

<u>Pro</u> <u>se</u> Plaintiff Anthony McGriff ("Plaintiff"), who is a state prisoner currently incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania, has commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a state law claim for medical malpractice. (Doc. No. 1.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. However, the Court will grant Plaintiff leave to file an amended complaint.

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

## I.     BACKGROUND

On September 21, 2022, Plaintiff filed his Section 1983 complaint in the United States District Court for the Eastern District of Pennsylvania ("Eastern District").  (Doc. No. 1.)  On October 3, 2022, the Eastern District transferred Plaintiff's case to the Middle District (Doc. No. 6), and the following day, this Court issued an Order directing Plaintiff to either pay the requisite filing fee or to file a signed application to proceed in forma pauperis within thirty (30) days (Doc. No. 10.  In accordance with that Order, Plaintiff filed a motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 11, 12.)  The Court, having reviewed Plaintiff's motion and trust fund account statement, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

In his Section 1983 complaint, Plaintiff names the following individuals as defendants, all of whom worked at SCI Huntingdon during the period of time relevant to Plaintiff's claims: (1) Superintendent Kauffman; (2) J. Spyker, Deputy Superintendent of Centralized Services; (3) J. Kohler, Deputy Superintendent of Facilities Management; (4) Lieutenant Long, Unit Manager of the Restricted Housing Unit ("RHU"); (5) Goss and Yost, Unit Managers; (6) J. Rivello, Facility Manager; (7) C. Stone, Maintenance Manager Supervisor; (8) Captain Wendle; (9) Sergeant Reihart; (10) Correctional Officers Young, Sloppy, Kyper, Tucker, Kilcoit, and Diver; (11) D. George, Corrections Unit Manager; (12) Wakefield, Grievance

Coordinator; (13) S. Ellenberger, Hearing Examiner; (14) Cousins, Psychiatrist; (15) Brandy Lynch, RNS; and (16) Sean McCorkle, RNS.  (Doc. No. 1 at 1-3.)

### A.   Plaintiff's Legal Claims

In his thirty-two (32) page complaint,[2] Plaintiff repeatedly claims that he is being harassed, bullied, taunted, and humiliated by the staff at SCI Huntingdon.  See, e.g., (Doc. No. 1 at 4, 7, 10, 14-15, 17-19, 26-27).  Plaintiff  also claims as follows: that he is being retaliated against for filing grievances, see, e.g., (id. at  24, 26, 29); that his due process rights are being violated in connection with his misconduct proceedings, see, e.g., (id. at 14); that he is not being afforded adequate medical care, see, e.g., (id. at 6, 11, 15-16, 25); that he was subjected to an unlawful strip search, see, e.g., (id. at 28); and that the conditions of his confinement are unconstitutional based upon cold temperatures, uncleanliness, mold, lack of air ventilation, and various smells, see, e.g., (id. at 5, 8, 11, 15, 17, 19, 25-27).

As a result of these various claims, the Court construes Plaintiff's complaint as asserting violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.   The Court also treats Plaintiff's complaint as asserting a state law claim for medical malpractice. (Id. at 11.)  As for relief, Plaintiff seeks injunctive and monetary relief.  (Id. at 10, 12.)

---

[2]  Attached to Plaintiff's thirty-two (32) complaint are one-hundred and thirty-nine (139) pages of exhibits.  (Doc. No. 1-1 at 1-139.)  Plaintiff has not identified these exhibits or specifically cited to them in his complaint.

### B.      Plaintiff's Factual Allegations

Plaintiff alleges that the events giving rise to his claims began in January of 2018 and continued up until June of 2022.  (Id. at 2.)  Plaintiff also alleges that these events occurred on A Block, DA Block, and GA Block, and in the RHU at SCI Huntingdon.  (Id.)  Many of the factual allegations that Plaintiff has set forth in support of his various claims have been couched in broad and general terms and have not been tethered to any particular Defendant.   To the extent, however, that Plaintiff's allegations relate specifically to any of the named Defendants, the Court recounts such allegations below.

### 1.      Defendants Long and Stone

Plaintiff alleges that, on an unspecified date, while he was confined in the RHU, "[e]very last cell was 30 degrees below zero."  (Id. at 5 (complaining that he has pain in his body and aches in his back, knees, and fingers).)  Plaintiff alleges that he told "those who were in charge[,]" but that they "repeatedly" said there was "heat on the block."  (Id.)  In connection with these allegations, Plaintiff alleges that Defendant Long came to his cell and that he just walked away.  (Id.)  Plaintiff alleges that he subsequently filed a grievance, but that "[m]aintenance" responded to him that it was seventy (70) degrees in his cell.  (Id. (arguing, however, that maintenance never came to his cell).)   Plaintiff further alleges that Defendant Stone, the

4

maintenance supervisor, "went along with this deceit" and "along with [Defendant] Long." (Id.)

### 2. Defendants Lynch, Cousins, and McCorkle

Plaintiff alleges that he suffers from bipolar disorder, anxiety, and depression mania and that he has been on "meds" for years. (Id. at 6.) Plaintiff alleges that, on an unspecified date, while he was on DA Block, he dropped his "meds" on the table and told Defendant Lynch that he was refusing his "meds." (Id.) Plaintiff alleges that the next day, "they" refused to give him his "meds." (Id.) In support, Plaintiff alleges that he was informed by a nurse that his "meds" were being discontinued due to his "inappropriate throwing [of] medication" at a nurse. (Id.; id. at 16.) Plaintiff contends that this was a lie and that he informed Defendant Cousins of the dangers that come with withdrawal symptoms. (Id. (alleging that Defendant Cousins rejected "[his] advice" and told Plaintiff that his medication does not have "side effects or withdrawal [symptoms]").) Plaintiff contends that Defendant Cousins "turn[ed] her back" on him and took him off the "Pshchratio [sic] List." (Id.)

In a similar vein, Plaintiff alleges the following with respect to Defendant McCorkle: "[w]hen you complaint [sic] about procedures in how they must perform them they tell you your [sic] wrong we know best." (Id. at 15.) Plaintiff also alleges that Defendant McCorkle "is not mindful of the dangers of people tak[ing] there [sic] medication" and then stopping "abruptly[.]" (Id.)

### 3.      Defendants Reihart, Tucker, and Kyper

Plaintiff alleges that, on an unspecified date, Defendant Tucker informed him that he was on a phone restriction.  (Id. at 7.)  Plaintiff alleges that he "protested" this and that Defendant Tucker explained to him that Defendant Reihart had issued him a misconduct, resulting in the phone restriction.  (Id.)  Plaintiff alleges that he was not told why he was issued this misconduct and, instead, was told to go to his cell.  (Id.)  Plaintiff also alleges that Defendant Tucker subsequently issued him a misconduct on the alleged basis that Plaintiff had threatened Defendant Tucker and his family with bodily harm, had used obscene and inappropriate language, and had refused to obey an order.  (Id.)  Plaintiff alleges that he was subsequently transferred to the RHU, where "[t]hey" gave him "no bedding [or] mattress to sleep on."  (Id.)

In addition, Plaintiff alleges that, on or about November 15, 2021, when he was called for "morning chow[,]" he picked up two (2) sugar packets. (Id. at 20.) Plaintiff alleges that Defendant Tucker pointed to Plaintiff and told him to "[d]rop it[,]" which Plaintiff did.  (Id.)  Plaintiff alleges that Defendant Tucker became irate and gave Plaintiff a direct order to go to the "center."  (Id.)  Plaintiff alleges that he was subsequently told to go to his cell and "pack up."  (Id.)  Plaintiff alleges that all of this was because Defendant Tucker told "a bunch of lies."  (Id.)  Plaintiff alleges that he spent thirty (30) days in the RHU.  (Id.)

Plaintiff also alleges that, on or about January 1, 2022, during "chow lunch time[,]" Plaintiff asked the block worker for an extra piece of cake since there was no one behind Plaintiff in line.  (Id.)  Plaintiff alleges that Defendant Tucker "screamed down from the top of the block" that there were was "no extra[.]"  (Id.)  Plaintiff alleges that he was told to go to his cell and that he was subsequently taken to the RHU.  (Id. at 20-21; id. at 21 (alleging that a non-defendant correctional officer explained to Plaintiff that he had "got in" the face of another non-defendant correctional officer).)  Plaintiff alleges, however, that "[t]here [sic] lying."  (Id.)  Plaintiff also alleges that Defendant Kyper issued him a misconduct, wherein Defendant Kyper stated that Plaintiff had used abusive language and disobeyed an order.  (Id.)  In seeming support of these allegations, Plaintiff claims that "[t]hey are a very vindictive [a]dministration[.]"  (Id.)

Plaintiff further alleges that, on an unspecified date, he was "having phone time" and was "rushing back" to the phone.  (Id. at 23.)  Plaintiff alleges that, as he was doing so, he swept his hand across the side and front of "the machine[.]"  (Id.)  Plaintiff alleges that Defendant Tucker "started to hollar [sic]" at Plaintiff and said: "don't punch the machine."  (Id.)  Plaintiff alleges that he denied punching the machine.  (Id.)  In addition, Plaintiff alleges that he informed Defendant Tucker that the "machines [were] down."  (Id.)  Plaintiff claims that Defendant Tucker became irate and directed Plaintiff to hang up the phone and go to his cell.  (Id.)  Plaintiff

7

alleges that "they" subsequently issued him a misconduct for which he received a thirty (30) day cell restriction.  (Id.)

### 4. Defendants Kauffman and Rivello

Plaintiff claims that the administrators at SCI Huntingdon do not "have a clue[,]" and that Defendant Kauffman "believes every bias statement no matter if [it is] contrary to law or not."  (Id. at 14.)  In support, Plaintiff alleges that "the people under [Defendant Kauffman] [are] telling multiple lies[,]" and are harassing and bullying the people they have sworn to look after.  (Id.)  Additionally, Plaintiff alleges that Defendant Rivello, the new Superintendent, is no different than Defendant Kauffman, the former Superintendent.  (Id. at 21 (alleging that the new Superintendent "acts no different" and that "somethings [sic] wrong here").)

### 5. Defendants George, Spyker, and Kohler

Plaintiff alleges that the PRC Committee, which is comprised of Defendants George, Spyker, and Kohler, is "bias[ed]" and is not "inclined to grant or show leniency[.]"  (Id. at 14.)  Plaintiff also alleges that "[t]here [sic] officers always tell the truth even though the evidence shows otherwise."  (Id.)  Plaintiff alleges that this is "[m]odern day [c]orporal [p]unishment without the visible abuse[.]"  (Id.)

### 6. Defendants Kilcolt and Diver

Plaintiff alleges that on February 5, 2021, Defendant Kilcolt came to his cell door, asking Plaintiff if he wanted to "sell [his] shower for a tray."  (Id. at 18.)

8

Plaintiff replied no, and Defendant Kilcolt returned with a tray for Plaintiff.  (Id.)

Plaintiff alleges that there was a "clear substance" between "the container and the

bread."  (Id. (alleging that this may have been shampoo gel).)  Plaintiff alleges that

when "[t]hey came back to collect the trash," he told "them" about the "sticky stuff"

on his bread and tray. (Id.) In addition, Plaintiff appears to allege that he

subsequently had an interaction with Defendant Diver, who stated to Plaintiff as

follows: "why you were [sic] bitching when we came for you to move you." (Id.)

Plaintiff alleges that this is when "they" put him in quarantine.  (Id.)

### 7.  Defendants Ellenberger and Goss

Plaintiff alleges that Defendant Ellenberger, a hearing examiner, treats the

correctional officers who are issuing the misconducts to the inmates as friends, no

matter what the officers are writing on the misconducts that they are submitting to

Defendant Ellenberger. (Id. at 4.)  In addition, Plaintiff alleges that, no matter what,

there is "30 days cell restriction/30-RHU time."  (Id.)  Plaintiff also alleges that

"there is no second guessing about . . . guilty[,] always!"  (Id.)  And, in a similar

vein, Plaintiff alleges that Defendant Goss, a unit manager, always "agrees with her

staff with no justice."  (Id.)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of <u>pro</u> <u>se</u> prisoner litigation, a district court must be mindful that a document filed <u>pro</u> <u>se</u> "is to be liberally construed." <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A <u>pro</u> <u>se</u> complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.  DISCUSSION

### A.  Section 1983

Plaintiff has filed his complaint pursuant to Section 1983, asserting a violation of the First, Fourth, Eighth, and Fourteenth Amendments, as well as a state law claim for medical malpractice.  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

<u>Id.</u>  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."  <u>See</u> <u>Shuman v. Penn Manor School Dist.</u>, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).

11

Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right."  See id. (citation omitted).

### 1.      Personal Involvement

In order for liability to attach under 42 U.S.C. § 1983, Plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

### a.      Defendants Yost, Wendle, Young, Sloppy, and Wakefield

The Court finds that there is a complete absence of allegations in Plaintiff's complaint that would give rise to a plausible inference that Defendants Yost, Wendle, Young, Sloppy, or Wakefield were personally involved in any asserted deprivation of Plaintiff's constitutionally protected rights.  While these defendants have been named in the caption of the complaint (Doc. No. 1 at 1) and/or have also

been listed as Defendants in the "Parties" section of the complaint (id. at 3), they have not been mentioned anywhere else in the body of the complaint. Without such allegations of personal involvement, however, liability cannot be imposed against them under Section 1983. Thus, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants Yost, Wendle, Young, Sloppy, and Wakefield. As such, Plaintiff's Section 1983 claims against these Defendants will be dismissed from the complaint.

### b.    Defendants George, Spyker, and Kohler

In addition, the Court finds that Plaintiff has also failed to show the personal involvement of Defendants George, Spyker, and Kohler for purposes of this Section 1983 action. In the complaint, Plaintiff broadly alleges that the PRC Committee, which is comprised of Defendants George, Spyker, and Kohler, is "bias[ed]" and is not "inclined to grant or show leniency[.]" (Doc. No. 1 at 14.) Plaintiff also broadly alleges that "[t]here [sic] officers always tell the truth even though the evidence shows otherwise." (Id.) Plaintiff appears to claim that this constitutes a violation of his due process rights, as well as "[m]odern day [c]orporal [p]unishment without the visible abuse[.]" (Id.)

While Plaintiff appears to claim that Defendants George, Spyker, and Kohler violated his rights under the Fourteenth Amendment (id.), the Court finds that Plaintiff's complaint fails to show the factual basis for how these Defendants were

personally involved in that alleged violation. And, as already explained above, without such allegations of personal involvement, liability cannot be imposed against these Defendants under Section 1983. Thus, for all of these reasons, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants George, Spyker, and Kohler. As such, Plaintiff's Section 1983 claims against these Defendants will be dismissed from the complaint.

### c.    Defendants Kauffman and Rivello

The Court finds that Plaintiff has also failed to allege the personal involvement of Defendants Kauffman and Rivello for purposes of this Section 1893 action. In the complaint, Plaintiff broadly alleges that the administrators at SCI Huntingdon do not "have a clue[,]" and that Defendant Kauffman "believes every bias statement no matter if [it is] contrary to law or not." (Id. at 14.) In support, Plaintiff alleges that "the people under [Defendant Kauffman] [are] telling multiple lies[,]" and are harassing and bullying the people they have sworn to look after. (Id.) Plaintiff also alleges that Defendant Rivello, the new Superintendent, is no different than Defendant Kauffman, the former Superintendent. (Id. at 21 (alleging that the new Superintendent "acts no different" and that "somethings wrong here").)

Having reviewed these allegations, the Court finds that Plaintiff's complaint does not identify what federal constitutional rights Defendants Kauffman and Rivello are alleged to have violated. In addition, Plaintiff's complaint does not

show, as a factual matter, how these individual Defendants were personally involved in such alleged violations of Plaintiff's constitutional rights.  Thus, the Court finds that Plaintiff's complaints fails to state a claim upon which relief can be granted against Defendants Kauffman and Rivello.  Consequently, Plaintiff's Section 1983 claims against these Defendants will be dismissed.

### d.   Defendants Kilcolt and Diver

The Court finds that Plaintiff has also failed to allege the personal involvement of Defendants Kilcolt and Diver for purposes of this Section 1893 action.  In the complaint, Plaintiff alleges that, on February 5, 2021, Defendant Kilcolt came to his cell door, asking Plaintiff if he wanted to "sell [his] shower for a tray." (Id. at 18.) Plaintiff replied no, and Defendant Kilcolt returned with a tray for Plaintiff.  (Id.) Plaintiff alleges that there was a "clear substance" between "the container and the bread." (Id. (alleging that this may have been shampoo gel).)  Plaintiff alleges that when "[t]hey came back to collect the trash," he told "them" about the "sticky stuff" on his bread and tray. (Id.) In addition, Plaintiff appears to allege that he subsequently had an interaction with Defendant Diver.  (Id.)  More specifically, Plaintiff alleges that Defendant Diver stated to Plaintiff as follows: "why you were [sic] bitching when we came for you to move you." (Id.)  Plaintiff alleges that this is when "they" put him in quarantine.  (Id.)

The Court, having reviewed these allegations, finds that Plaintiff's complaint does not identify what federal constitutional rights Defendants Kilcolt and Diver are alleged to have violated.  In addition, Plaintiff's complaint does not show how these two (2) Defendants were personally involved in such an alleged violation of Plaintiff's rights.  Moreover, even if Plaintiff's allegation that Defendant had used profanity towards Plaintiff was true, the Court would still find that this allegation fails to state a claim upon which relief can be granted under Section 1983.  See Ewell v. Espesito, No. 22-cv-00963, 2022 WL 3370778, at *2 (M.D. Pa. Aug. 16, 2022) (stating that, "[i]n general, verbal harassment, taunting, and profanity, without any injury or a threat thereof, are insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment" (citations omitted)).  As such, Plaintiff's Section 1983 claims against Defendants Kilcolt and Diver will be dismissed.

### e.   Defendants Ellenberger and Goss

Finally, the Court finds that Plaintiff has also failed to allege the personal involvement of Defendants Ellenberger and Goss for purposes of this Section 1983 action.  In the complaint, Plaintiff alleges that Defendant Ellenberger, a hearing examiner, treats the correctional officers who are issuing the misconducts to the inmates as friends, no matter what the officers are writing on the misconducts that they are submitting to Defendant Ellenberger.  (Doc. No. 1 at 4.)   In addition,

Plaintiff alleges that, no matter what, there is "30 days cell restriction/30-RHU time." (Id.) Plaintiff also alleges that "there is no second guessing about . . . guilty[,] always!" (Id.) And, in a similar vein, Plaintiff alleges that Defendant Goss, a unit manager, always "agrees with her staff with no justice." (Id.)

Having reviewed these allegations, the Court finds that Plaintiff's complaint does not identify what federal constitutional rights Defendants Kilcolt and Diver are alleged to have violated. Moreover, Plaintiff's complaint does not set forth the factual basis for how these two (2) Defendants were personally involved in such alleged violations of Plaintiff's constitutional rights. As such, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants Kilcolt and Diver. Consequently, Plaintiff's Section 1983 claims against these Defendants will be dismissed.

### 2. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] "has to show such an

entitlement with its facts." See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted).

As set forth above, Plaintiff's complaint does not identify what federal constitutional rights Defendants Yost, Wendle, Young, Sloppy, Wakefield, George, Spyker, Kohler, Kauffman, and Rivello are alleged to have violated and/or how they were personally involved in committing such violations of Plaintiff's constitutional rights. As a result, the Court has been left—and Defendants, if served, would also be left—to speculate as to what alleged conduct on their part gives rise to constitutional infringements. Thus, because Plaintiff's complaint does not provide fair notice of his claims, or the grounds upon which those claims rest, as to these specific Defendants, the Court finds that Plaintiff's complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) ("Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

### 3.    First Amendment Claims

In the complaint, Plaintiff appears to be asserting that he suffered retaliation for engaging in conduct protected by the First Amendment.  <u>See, e.g.</u>, (Doc. No. 1 at 10, 24, 26, 29).  In order to state a First Amendment retaliation claim, Plaintiff must show that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." <u>See</u> <u>Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  However, even if Plaintiff states a <u>prima</u> <u>facie</u> case of retaliation, "prison officials may still prevail if they establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>See</u> <u>id.</u> (citation and internal quotation marks omitted).

Here, Plaintiff appears to be asserting his First Amendment retaliation claim against Defendants Tucker, Reihart, and Kyper. As set forth above in the Background section of this Memorandum, Plaintiff's complaint discusses several incidents involving Defendant Tucker and tangentially involving Defendants Reihart and Kyper.  As a result of these incidents, Plaintiff claims that he was issued misconducts and/or sent to the RHU.  (Doc. No. 1 at 7, 20-21, 23.)

The Court, having reviewed all of these allegations against Defendants Tucker, Reihart, and Kyper, finds that Plaintiff has failed to state a First Amendment

retaliation claim upon which relief can be granted.  While the Court recognizes that transferring an inmate to the RHU constitutes an adverse action, see Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (providing that a prisoner's transfer to administrative custody constitutes an adverse action), the Court finds that the complaint does not show that Plaintiff engaged in a constitutionally protected activity or that there is "a causal link" between him engaging in such protected activity and the adverse actions that were allegedly taken against him by Defendants Tucker, Reihart, and Kyper.[3]  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). As a result, the Court will dismiss Plaintiff's First Amendment retaliation claims against Defendants Tucker, Reihart, and Kyper from the complaint.

### 4. Fourth Amendment Claim

In the complaint, Plaintiff appears to be asserting a Fourth Amendment claim on the basis that he was unlawfully strip searched.  (Doc. No. 1 at 28.)   The Court recognizes that the Fourth Amendment applies to a bodily search in the prison setting and that it affords prisoners a limited right of bodily privacy.  See Parkell v. Danberg, 833 F.3d 313, 325 (3d Cir. 2016).   The Court also recognizes that this right is subject to reasonable intrusions that are necessitated by the prison setting.  See id.

---

[3]  Although Plaintiff loosely asserts in his complaint that he was retaliated against for filing grievances (Doc. No. 1 at 26), he has not tied such assertions to Defendants Tucker, Reihart, and Kyper.

Even though the Court recognizes that this limited right exists, the Court finds that Plaintiff has failed to state a Fourth Amendment claim upon which relief can be granted.  In particular, the Court finds that Plaintiff has not set forth the factual allegations that underpin his Fourth Amendment claim.  The Court further finds that it is unclear against whom Plaintiff seeks to hold liable for the alleged strip search. Thus, Plaintiff's Fourth Amendment claim will be dismissed from the complaint.

### 5.    Eighth Amendment Claims

In the complaint, Plaintiff asserts Eighth Amendment claims based upon the allegedly unconstitutional conditions of his confinement and based upon the allegedly inadequate medical care he received. "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015). As explained by the United States Supreme Court, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511

U.S. 825, 834 (1994)).   Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'"  See id. (quoting Farmer, 511 U.S. at 834).  Under the second prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'"  See id. (quoting Farmer, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38)).

### a.    Conditions of Confinement

In the complaint, Plaintiff alleges that, on an unspecified date, while he was confined in the RHU, "[e]very last cell was 30 degrees below zero." (Doc. No. 1 at 5 (complaining that he has pain in his body and aches in his back, knees, and fingers).)  Plaintiff alleges that he told "those who were in charge[,]" but they "repeatedly" said there was "heat on the block." (Id.)  In connection with these allegations, Plaintiff alleges that Defendant Long came to his cell and that he just walked away.  (Id.) Plaintiff alleges that he subsequently filed a grievance, but that "[m]aintenance" responded to him that it was seventy (70) degrees in his cell.  (Id. (alleging, however, that maintenance never came to his cell).)  Plaintiff further alleges that Defendant Stone, the maintenance supervisor, "went along with this deceit" and "along with [Defendant] Long."  (Id.)

The Court, having reviewed these allegations, finds that Plaintiff has not plausibly alleged a deprivation of the Eighth Amendment based upon the conditions

of his confinement.  Even if Plaintiff's allegation is true that the temperatures in the RHU cells were cold, the Court still finds that Plaintiff's complaint does not sufficiently allege that Defendants Stone or Long acted with deliberate indifference—i.e., that they were both aware of an excessive risk of harm to Plaintiff, which accompanied these allegedly cold temperatures in the RHU cells, but that they disregarded that risk.  See Farmer, 511 U.S. at 837 (holding that a "prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Instead, the Court finds that any allegations against these two (2) Defendants, which could be construed as shedding light on their subjective statement of mind, are broad and vague and fall short of pleading deliberate indifference.  See Beers-Capitol, 256 F.3d a 133 (stating that "[t]he knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware" (citing Farmer, 511 U.S. at 837-38)).  Thus, for all of these reasons, the Court concludes that Plaintiff's complaint fails to state an Eighth Amendment conditions-

of-confinement claim upon which relief can be granted against Defendants Long and Stone and, as such, this claim will be dismissed from the complaint.

### b.    Medical Care

In the complaint, Plaintiff appears to be asserting that Defendants Lynch, Cousins, and McCorkle failed to provide him with adequate medical care in violation of the Eighth Amendment.   In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need."  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106).

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to the obviousness of those consequences."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

As set forth above, Plaintiff alleges that he suffers from bipolar disorder, anxiety, and depression mania and that he has been on "meds" for years. (Doc. No. 1 at 6.) In addition, Plaintiff alleges that, on an unspecified date, while he was on DA Block, he dropped his "meds" on the table and told Defendant Lynch that he was refusing his "meds." (Id.) Plaintiff alleges that the next day, "they" refused to give him his "meds" and that he was informed by a nurse that his "meds" were being discontinued due to his "inappropriate throwing [of] medication" at a nurse. (Id.; id. at 16.) Plaintiff contends that this was a lie and that he informed Defendant Cousins of the dangers that come with withdrawal symptoms. (Id.) Plaintiff also contends, however, that Defendant Cousins "rejected [his] advice" and told Plaintiff that his medication does not have "side effects or withdrawal [symptoms]." (Id.) And, in a similar vein, Plaintiff alleges the following with respect to Defendant McCorkle:

26

"[w]hen you complaint [sic] about procedures in how they must perform them they tell you your [sic] wrong we know best." (Id. at 15.)  Plaintiff also alleges that Defendant McCorkle "is not mindful of the dangers of people tak[ing] there [sic] medication" and then stopping "abruptly[.]" (Id.)

The Court, having reviewed these allegations, finds that Plaintiff has not sufficiently alleged that Defendants Lynch, Cousins, and McCorkle were deliberately indifferent to his medical needs.  From what the Court can discern, Plaintiff's complaint alleges disagreement with Defendant Cousins over the potential side effects of being taken off his medication and disagreement with Defendant McCorkle as to the proper medical treatment for him.  Such disagreement, however, is insufficient to establish a violation of the Eighth Amendment.[4]  See Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) (explaining that "mere disagreement as to the proper medical treatment does not support a claim of an [E]ighth [A]mendment violation" (citation and internal quotation marks omitted)); Parkell, 833 F.3d at 337 (explaining that "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation, nor is [m]ere disagreement as to the proper medical treatment" (citation and internal quotation

---

[4]  As discussed below, Plaintiff will be provided the opportunity to file an amended complaint. Thus, to the extent that Plaintiff can attribute deliberate indifference to the conduct of Defendants Lynch, Cousins, or McCorkle, he will be able to do so in his amended complaint.

marks omitted)).  Thus, for all of these reasons, the Court finds that Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted against Defendants Lynch, Cousins, and McCorkle.  As such, Plaintiff's Eighth Amendment claims against these Defendants will be dismissed from the complaint.[5]

## B.   Leave to Amend

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

---

[5]   The Court will defer consideration of Plaintiff's state law medical malpractice claim (Doc. No. 1 at 11) pending the filing of an amended complaint. See generally 28 U.S.C. § 1367(c)(3) (stating that "a district court may decline to exercise supplemental jurisdiction over [claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy] when . . . the district court has dismissed all claims over which it has original jurisdiction.").

party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend his claims would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above.  Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.    CONCLUSION

To conclude, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).  The Court will also grant Plaintiff leave to file an amended complaint. An appropriate Order follows.


Dated: January 5, 2023                                    s/ Sylvia H. Rambo
                                                          SYLVIA H. RAMBO
                                                          United States District Judge