# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY MCGRIFF,** | : | |
| **Plaintiff** | : | **No. 1:22-cv-01547** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **SUPERINTENDENT KAUFFMAN,** | : | |
| **et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff Anthony McGriff ("Plaintiff"), who is a state prisoner currently incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon") in Huntingdon, Pennsylvania, commenced the above-captioned action by filing an original complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a state law claim for medical malpractice. (Doc. No. 1.) In accordance with the Prison Litigation Reform Act,[1] the Court previously reviewed Plaintiff's original complaint and concluded that it failed to state a claim upon which relief could be granted. (Doc. Nos. 28, 29.) Thus, the Court dismissed the original complaint, but without prejudice to Plaintiff filing an amended complaint. (<u>Id.</u>) Now before the Court is Plaintiff's amended

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

complaint.  (Doc. No. 35.)  For the reasons set forth below, the Court will partially dismiss the amended complaint.

## I.     BACKGROUND

### A.     The Original Complaint

On September 21, 2022, Plaintiff filed his original Section 1983 complaint in the United States District Court for the Eastern District of Pennsylvania ("Eastern District").  (Doc. No. 1.)  On October 3, 2022, the Eastern District transferred Plaintiff's case to the Middle District (Doc. No. 6), and the following day, this Court issued an Order directing Plaintiff to either pay the requisite filing fee or to file a signed application to proceed in forma pauperis within thirty (30) days (Doc. No. 10).  In accordance with that Order, Plaintiff filed a motion for leave to proceed in forma pauperis, as well as his prisoner trust fund account statement.  (Doc. Nos. 11, 12.)

In his original complaint, Plaintiff named the following individuals as defendants, all of whom worked at SCI Huntingdon during the period of time relevant to Plaintiff's claims: (1) Superintendent Kauffman; (2) J. Spyker, Deputy Superintendent of Centralized Services; (3) J. Kohler, Deputy Superintendent of Facilities Management; (4) Lieutenant Long, Unit Manager of the Restricted Housing Unit ("RHU"); (5) Goss and Yost, Unit Managers; (6) J. Rivello, Facility Manager; (7) C. Stone, Maintenance Manager Supervisor; (8) Captain Wendle; (9)

Sergeant Reihart; (10) Correctional Officers Young, Sloppy, Kyper, Tucker, Kilcoit, and Diver; (11) D. George, Corrections Unit Manager; (12) Wakefield, Grievance Coordinator; (13) S. Ellenberger, Hearing Examiner; (14) Cousins, Psychiatrist; (15) Brandy Lynch, RNS; and (16) Sean McCorkle, RNS.  (Doc. No. 1 at 1-3.)

In his thirty-two (32) page original complaint,[2] Plaintiff generally asserted that the events giving rise to his claims began in January of 2018 and continued up until June of 2022, and occurred on A Block, DA Block, and GA Block, and in the RHU at SCI Huntingdon. (Id. at 2.)  In addition, Plaintiff repeatedly claimed that he is being harassed, bullied, taunted, and humiliated by the staff at SCI Huntingdon. See, e.g., (id. at 4, 7, 10, 14-15, 17-19, 26-27).  Plaintiff  also claimed: that he is being retaliated against for filing grievances, see, e.g., (id. at  24, 26, 29); that his due process rights are being violated in connection with his misconduct proceedings, see, e.g., (id. at 14); that he is not being afforded adequate medical care, see, e.g., (id. at 6, 11, 15-16, 25); that he was subjected to an unlawful strip search, see, e.g., (id. at 28); and that the conditions of his confinement are unconstitutional based upon cold temperatures, uncleanliness, mold, lack of air ventilation, and various smells,

---

[2]  Attached to Plaintiff's thirty-two (32) page original complaint are one-hundred and thirty-nine (139) pages of exhibits.  (Doc. No. 1-1 at 1-139.)

see, e.g., (id. at 5, 8, 11, 15, 17, 19, 25-27).[3]  As for relief, Plaintiff sought injunctive and monetary relief.  (Id. at 10, 12.)

On January 5, 2023, the Court granted Plaintiff leave to proceed in forma pauperis and conducted an initial review of his original complaint. (Doc. Nos. 28, 29.)  Based upon Plaintiff's various claims, the Court construed his original complaint as asserting violations of his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.  The Court also treated Plaintiff's original complaint as asserting a state law claim for medical malpractice. (Id. at 11.)

Ultimately, the Court concluded that Plaintiff's original complaint failed to state a claim upon which relief could be granted.  (Doc. Nos. 28, 29.)  More specifically, the Court concluded that, with respect to the following Defendants, Plaintiff had failed to allege how they were personally involved in the act or acts that he claimed violated his federally protected rights: Yost; Wendle; Young; Sloppy; Wakefield; George; Skyper; Kohler; Kauffman; Rivello; Kilcolt; Diver; Ellenberger; and Goss.  (Doc. No. 28 at 12-17.)  The Court also concluded that, because Plaintiff had failed to allege their personal involvement in this Section 1983

---

[3]  The allegations underpinning all of these claims are set forth in great detail in the Court's January 5, 2023 Memorandum and Order.  (Doc. Nos. 28, 29.)  Because the focus of the instant Memorandum and accompanying Order is on Plaintiff's amended complaint, the Court need not set forth all of those allegations here.

action, his original complaint did not provide fair notice of his claims, or the grounds upon which those claims rest, as to these specific Defendants. (<u>Id.</u> at 17-18.)

In addition, the Court concluded that Plaintiff had failed to state: a First Amendment retaliation claim upon which relief could be granted against Defendants Tucker, Reihart, and Kyper (<u>id.</u> at 19-20); an Eighth Amendment conditions-of-confinement claim against Defendants Stone and Long (<u>id.</u> at 23-24); and an Eighth Amendment deliberate indifference to medical care claim against Defendants Lynch, Cousins, and McCorkle (<u>id.</u> at 25-30). And, finally, to the extent that Plaintiff sought to assert a Fourth Amendment claim against any of the Defendants based upon an alleged strip search, the Court concluded that Plaintiff had also failed to state a claim upon which relief could be granted. (<u>Id.</u> at 20-21.)

However, the Court could not say that granting Plaintiff leave to amend his claims would be futile and, thus, the Court granted Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified in the Court's January 5, 2023 Memorandum and accompanying Order. (<u>Id.</u> at 28-29; Doc. No. 29.)

**B.    The Amended Complaint**

On February 6, 2023, Plaintiff filed an amended Section 1983 complaint. (Doc. No. 35.)  Named as a Defendant for the first time is "N. Supervisor Davis" (Davis"), as well as the following individuals, all of whom were previously named as Defendants in the original complaint: Kauffman; Cousins; Lynch, now referred to as "Hobble;"[4] McCorkle; Tucker; Reihart; and Rivello.  (Id. at 1, at 2-3.)

**1.    Plaintiff's Legal Claims**

In his twenty-five (25) page amended complaint,[5] Plaintiff claims: that he is being harassed, bullied, and retaliated against for filing grievances (id. at 12-14, 16-20, 22-24); that the medical care he receives at SCI Huntingdon is inadequate for his medical and mental health needs concerning his bipolar II disorder, depression, anxiety, insomnia, asthma, and COPD (id. at 4, 8-11, 20, 24); and that the conditions of his confinement are unconstitutional based upon the presence of mold, mildew, and asbestos in the prison (id. at 10, 24).  Based upon these various claims, the Court

---

[4]   In the amended complaint, Plaintiff refers to Defendant Lynch as Defendant "Brandy Hobble (Lynch)[.]"  (Doc. No. 35 at 4.)  After Plaintiff filed his amended complaint, however, he submitted a letter to the Court, wherein he explains, inter alia, that "Brady [sic] Lynch doesn't existed [sic]" and that her name is "RN Brandy Hobble."  (Doc. No. 41 at 1.)  Thus, it appears that Defendant Lynch and Brandy Hobble may be one in the same.  For the sake of clarity, the Court will refer to Defendant Lynch as Defendant Hobble.

[5]  Attached to Plaintiff's amended complaint are various documents, titled Form DC-135A, Inmate's Request to Staff Member.  (Doc. No. 35 at 26-31.)

treats Plaintiff's amended complaint as asserting violations of his rights under the First and Eighth Amendments to the United States Constitution.  As for relief, Plaintiff seeks declaratory, injunctive, and monetary relief.  (Id. at 23-24.)

### 2.  Plaintiff's Factual Allegations

In his amended complaint, Plaintiff generally asserts that the events giving rise to his claims occurred at SCI Huntingdon, and began in January of 2018 and continued up until November of 2022.  (Id. at 4.)  Much like his original complaint, many of the factual allegations that Plaintiff has set forth in support of his various claims have been couched in broad and general terms and have not been tethered to any particular Defendant.  To the extent, however, that Plaintiff's allegations relate specifically to any of the named Defendants, the Court recounts such allegations below.

### a.  Defendants Cousins, Hobble, McCorkle, and Davis

Plaintiff alleges that, on August 8, 2020, after he received his medication from Defendant Hobble during "sick call," he proceeded to walk away when she and six (6) unidentified correctional officers stopped him and stated that he "must take [his] meds in front of [them]." (Doc. No. 35 at 7.)  Plaintiff asserts that he explained that he was "just getting some water" and that "they make [him] sleepy" so he was "taking them, [then] going to [his] cell." (Id.)  Plaintiff claims, however, that one of the correctional officers reached for his pepper spray, which caused Plaintiff to "step

7

back [and] drop the meds on the desk[.]"  (Id.)  Plaintiff further claims that he

informed Defendant Hobble that he was "refus[ing] to take [his] meds."  (Id.)

Plaintiff alleges that, two (2) days later, on August 10, 2020, Defendant

Cousins informed him that she would no longer be giving him his psychiatry

medication because Defendant Hobble stated that he threw medication at her.  (Id.

at 4, 8.)  Plaintiff asserts that he has submitted multiple request slips and grievances

regarding his medications, but to no avail.  (Id. at 4.)  Plaintiff further asserts that,

during a meeting on September 2, 2020, he expressed to Defendant Cousins that

there are "side effects as well as withdrawal symptoms" when "dealing with

Trasadone [sic] medication[,]" but that she did not want to hear it and stated that

there are no such side effects.  (Id. at 4; id. at 8 (alleging that he "tried to plead with

her about side effects" and that she must "start weaning a person off slowly when

. . . they [have] been taking meds for years").)

In connection with these allegations, Plaintiff claims that Defendant Cousins

was deliberately indifferent to his serious medical needs when she discontinued his

medication.  See (id. at 5).  Plaintiff further claims that Defendants McCorkle and

Davis "are also liable do [sic] to there [sic] lack of professionalism and knowledge

of there [sic] trade and profession."  (Id. at 8.)

### b.   Defendants Tucker and Reihart

Regarding Defendant Tucker, Plaintiff sets forth various incidents in which he appears to allege that Defendant Tucker was harassing, bullying, and/or retaliating against him.  (Id. at 12-13, 16, 18-19.)   More specifically, Plaintiff appears to allege that in January of 2021, Defendant Tucker wrote him a false misconduct for, allegedly, threatening him and his family with bodily harm, using abusive language, and refusing to obey an order.  (Id. at 12, 16; id. at 12 (alleging, vaguely, that the "only thing [Plaintiff] did was ask for a white shirt, issues a grievance").) Plaintiff asserts that he received thirty (30) days in the restricted housing unit ("RHU").  (Id.)  Plaintiff further asserts that he submitted a grievance on January 12, 2021, concerning Defendant Tucker's "harassment, bullying, [and] retaliation."  (Id.; id. at 16 (alleging that this "was nothing but harassment, bulling [sic] tactics[,] ill behavior[,] and retaliation . . . ").)

Plaintiff also alleges that, in January of 2021, after he returned from the RHU, he was informed by correctional officer Yarnell, a non-party, that he was on phone restriction.  (Id. at 13.)  Plaintiff asked how he could be on phone restriction when he "just came on the block a few days ago[,]" and Plaintiff was informed that Defendant Reihart had "left a message" that he was on phone restriction.  (Id. at 13; id. at 16.)  Plaintiff claims that he asked for a "white shirt (Lt. Capt.)" because this did not "make any sense[.]"  (Id. at 13; id. at 16.)  Plaintiff further claims, however,

that he was instructed that he could go to "center" for a "white shirt[,]" but that he opted instead to go to his cell.  (Id. at 13.)  Plaintiff asserts that Defendant Tucker began following him to his cell, "saying crazy things to [him]."  (Id. (alleging that these were "harass[ing], bulliing [sic] remarks").)

Plaintiff also appears to allege that, around this same time in January of 2021, he was using the phone, when ten (10) minutes into his phone call, Defendant Reihart told him to get off the phone.  (Id. at 15.)  Plaintiff alleges that he "asked her why[,]" stating that he still had five (5) minutes left, but that she "replyed [sic] about time[.]" (Id.)  Defendant Reihart also stated that, if she passed Plaintiff's cell and he was not in it, she would issue him a misconduct.  (Id.)  Plaintiff alleges that he rushed off the phone and ran up the stairs to beat her to his cell.  (Id.)  Plaintiff claims that, when he was at his cell, he asked her again why she did that, and "[s]he just said" that his "time was up."  (Id.)

In addition, Plaintiff alleges that, in June of 2021, he was hired for a job in the "pants department" to "mak[e] pants[.]"  (Id. at 12 (alleging that he "was happy" and that he told the supervisor of the CI Clothing Shop that he would "not let [him] down").)  Plaintiff asserts, however, that correctional officer Clark, a non-party, came to his cell less than fifteen (15) minutes later, stating to Plaintiff that he could "forget working at the CI Shop . . . because of [his] pass [sic] deeds."  (Id.)  Plaintiff

further alleges that he asked himself how Defendant Tucker could "have so much power and influence." (Id.)

Plaintiff also alleges that, in August of 2021, Defendant Tucker issued him another false misconduct for, allegedly, punching the kiosk machine. (Id. at 16.) Plaintiff claims that "[t]his is nothing but retaliatory action on there [sic] part[,] bulliing [sic][,] and harassment." (Id.) Plaintiff further claims that he is "aloud [sic] to submit [a] grievance because its [sic] stated in the DOC policy." (Id.)

Finally, Plaintiff alleges that, in November of 2021, Defendant Tucker issued him yet another false misconduct based upon allegations that Plaintiff had a condiment bag filled with salt, pepper, sugar, and coffee packs. (Id. at 18.) Plaintiff claims that Defendant Tucker asked him for the bag and told him to drop it on the desk, which Plaintiff did, but that Defendant Tucker became irate. (Id. at 18-19.) Plaintiff asserts that he was taken to the RHU "again" for thirty (30) days solitary confinement. (Id. at 19.) In connection with these specific allegations, Plaintiff broadly contends that Defendant Tucker and Reihart have been "harassing [him] for years." (Id.)

### c.    Defendants Rivello and Kauffman

Plaintiff alleges that he wrote request slips to Defendants Rivello and Kauffman, but that they denied him relief "because of the retaliation towards [him][.]"  (Id. at 17.)  Plaintiff further alleges that these "harassment tactics never end[.]"[6]

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient

---

[6]  After Plaintiff filed his amended complaint, he submitted a letter to the Court, explaining that he would like to make "corrections" to the "civil docket form[.]" (Doc. No. 41 at 1.) With the exception of Defendants Kauffman, Tucker, and Hobble, the individuals that Plaintiff has identified in this letter are not discussed in his amended complaint. (Id.)  Thus, to the extent that Plaintiff's letter could be treated as a motion to amend in order to add these individuals as defendants, it would be denied.

factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.    DISCUSSION

### A.    Section 1983

Plaintiff has filed his amended complaint pursuant to Section 1983, asserting

a violation of the First and Eighth Amendments.   (Doc. No. 35.)   Section 1983

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  Thus, "Section 1983 imposes civil liability upon any person who, acting under

the color of state law, deprives another individual of any rights, privileges, or

immunities secured by the Constitution or laws of the United States."  See Shuman

v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).

Section 1983 "does not create any new substantive rights but instead provides a

remedy for the violation of a federal constitutional or statutory right."   See id.

(citation omitted).

### 1.    Personal Involvement

In order for liability to attach under Section 1983, Plaintiff must sufficiently

allege that each defendant was personally involved in the act or acts that he claims

violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195,

1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." <u>Chavarriaga v. New Jersey Dep't of Corr.</u>, 806 F.3d 210, 222 (3d Cir. 2015) (citing <u>Rode</u>, 845 F.2d at 1207); <u>Dooley v. Wetzel</u>, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting <u>Rode</u>, 845 F.2d at 1207)).

### a. Defendants McCorkle and Davis

The Court finds that Plaintiff has failed to show the personal involvement of Defendants McCorkle and Davis for purposes of this Section 1983 action. In the amended complaint, Plaintiff broadly alleges that Defendants McCorkle and Davis are "liable do [sic] to there [sic] lack of professionalism and knowledge of there [sic] trade and profession." (Doc. No. 35 at 8.) The amended complaint, however, does not identify what federal constitutional rights Defendants McCorkle and Davis are alleged to have violated. Moreover, even if the Court were to assume <u>arguendo</u> that Plaintiff was claiming that Defendants McCorkle and Davis violated his rights under the Eighth Amendment, the Court still finds that the amended complaint fails to show the factual basis for how these Defendants were personally involved in that alleged violation. For instance, Plaintiff does not explain how they participated in, or had any knowledge of and acquiesced in, any wrongful conduct. Without such

allegations of personal involvement, liability cannot be imposed against these Defendants under Section 1983. Thus, the Court finds that the amended complaint fails to allege particular allegations of personal involvement on the part of Defendants McCorkle and Davis. As a result, the Court will dismiss Plaintiff's Section 1983 claims against these Defendants.

### b.    Defendants Kauffman and Rivello

The Court finds that Plaintiff has also failed to allege the personal involvement of Defendants Kauffman and Rivello for purposes of this Section 1893 action. Defendants Kauffman and Rivello, who have been named as Superintendents of SCI Huntingdon (Doc. No. 35 at 1), are supervisory officials. In the context of Section 1983, the United States Court of Appeals for the Third Circuit has recognized two theories of supervisory liability. See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Under one theory, a supervisor can be held liable if it is shown that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." See id. (citation and internal quotation marks omitted) (alteration in original); Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016). Under the other theory, a supervisor can be held liable if it is shown that he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

charge, had knowledge of and acquiesced in his subordinates' violations."  See A.M. ex rel. J.M.K., 372 F.3d at 586; Parkell, 833 F.3d at 330.

Here, the Court finds that there are no well-pleaded allegations in the amended complaint that would raise the inference that Plaintiff has established either one of these theories of supervisory liability against Defendants Kauffman and Rivello. Indeed, there are no allegations upon which the inference could be made that Defendants Kauffman and Rivello participated, directed, or knew of and acquiesced in any wrongdoing, or that they were deliberately indifferent to the consequences of a policy, practice, or custom that they had established and maintained.  Additionally, there are no allegations in the amended complaint to suggest which federal constitutional rights Defendants Kauffman and Rivello are alleged to have violated.

At most, the amended complaint contains a conclusory allegation that Plaintiff's requests slips were denied by Defendants Rivello and Kauffman "because of the retaliation towards [him]."  (Doc. No. 35 at 17.)  However, the law is clear that such a conclusory allegation is not entitled to the assumption of truth.  See Ashcroft, 556 U.S. at 679 (stating that "conclusions[ ] are not entitled to the assumption of truth[,]" and "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that while a court "must

accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions" (citation omitted)).

Accordingly, for all of these reasons, the Court finds that the amended complaint fails to allege particular allegations of personal involvement on the part of Defendants Kauffman and Rivello. As a result, the Court will dismiss Plaintiff's Section 1983 claims against these Defendants.

### 2. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] "has to show such an entitlement with its facts." See Fowler, 578 F.3d at 211 (citation and internal quotation marks omitted).

As set forth above, Plaintiff's amended complaint does not identify which federal constitutional rights Defendants Davis, McCorkle, Kauffman, and Rivello are alleged to have violated or how they were personally involved in committing such violations of Plaintiff's constitutional rights. As a result, the Court has been left—and Defendants, if served, would also be left—to speculate as to what alleged

conduct on their part gives rise to constitutional infringements. Thus, because Plaintiff's amended complaint does not provide fair notice of his claims, or the grounds upon which those claims rest, as to these specific Defendants, the Court finds that Plaintiff's amended complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that "[n]aturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8" (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

### 3. First Amendment Claim

In the amended complaint, Plaintiff appears to be asserting that he suffered retaliation for engaging in conduct protected by the First Amendment. See, e.g., (Doc. No. 35 at 12, 16, 18, 23.) In order to state a First Amendment retaliation claim, Plaintiff must show that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).

However, even if Plaintiff states a <u>prima facie</u> case of retaliation, "prison officials may still prevail if they establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>See id.</u> (citation and internal quotation marks omitted).

Here, Plaintiff appears to be asserting his First Amendment retaliation claim against Defendants Tucker and Reihart. As set forth above in the Background section of this Memorandum, Plaintiff's amended complaint discusses several incidents involving Defendant Tucker and tangentially involving Defendant Reihart. As a result of these incidents, Plaintiff claims that he was issued false misconducts and/or sent to the RHU. (Doc. No. 35 at 12-13, 16, 18.) The Court, having reviewed these allegations against Defendants Tucker and Reihart finds that Plaintiff has failed to state a First Amendment retaliation claim upon which relief can be granted.

The Court recognizes that the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. <u>See Watson v. Rozum</u>, 834 F.3d 417, 422 (3d Cir. 2016) (reiterating its prior holding that a prisoner-plaintiff engages in constitutionally protected activity when he files a grievance against a prison official (citing <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003))); <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002) (reiterating its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation

omitted)); <u>Allah v. Seiverling</u>, 229 F.3d 220, 223-25 (3d Cir. 2000) (concluding that the prisoner-plaintiff had stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials). The Court also recognizes that transferring an inmate to the RHU constitutes an adverse action. <u>See id.</u> at 225 (providing that a prisoner's transfer to administrative custody constitutes an adverse action).

Even when recognizing these legal principles, however, the Court still finds that the amended complaint does not allege "a causal link" between Plaintiff engaging in such protected activity and the adverse actions that were allegedly taken against him by Defendants Tucker and Reihart. <u>See Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). First, the allegations against Defendants Tucker and Reihart are conclusory. Second, they do not provide sufficient information about when Plaintiff filed grievances, against whom he specifically filed grievances, or how long after he filed grievances that the alleged retaliation occurred. Thus, even when viewing the facts in the light most favorable to Plaintiff, he has failed to show that the filing of grievances was a substantial or motivating factor in the alleged retaliation. As a result, the Court finds that Plaintiff's amended complaint fails to state a First Amendment retaliation claim upon which relief can be granted. The Court will,

therefore, dismiss Plaintiff's First Amendment retaliation claims against Defendants Tucker and Reihart.

### 4.    Eighth Amendment Claims

In the amended complaint, Plaintiff asserts Eighth Amendment claims based upon the allegedly unconstitutional conditions of his confinement and the allegedly inadequate medical care he received.  "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  As explained by the United States Supreme Court, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation."  See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal citations and quotation marks omitted).

Thus, in order "[t]o determine whether prison officials have violated the Eighth Amendment, [courts] apply a two-prong test[.]"  See Porter v. Pennsylvania Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Under the first prong, courts consider whether the deprivation was "'objectively, sufficiently serious[,]" that is, whether "a prison official's act or omission [resulted] in the denial of the minimal civilized measure of life's necessities[.]'"  See id. (quoting Farmer, 511 U.S. at 834).  Under the second

prong, courts must consider whether the prison official was "'deliberate[ly] indifferen[t] to inmate health or safety.'"  See id. (quoting Farmer, 511 U.S. at 834).

Regarding the first prong, life's necessities include food, clothing, shelter, medical care, and reasonable safety.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (stating that "when the government takes a person into custody against his or her will, it assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety" (citing DeShaney v. Winnebago Co. Dep't of Social Svcs., 489 U.S. 189, 199-200 (1989))); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (explaining that the Eighth Amendment imposes a duty upon prison officials "to ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to ensure that prison officials] take reasonable measures to guarantee the safety of the inmates" (citations and internal quotation marks omitted)).

Regarding the second prong, a prison official does not act with deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety"—that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837.  "The knowledge element of deliberate indifference is subjective, . . . meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should

have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 837-38)).

### a.    Conditions of Confinement

In the amended complaint, Plaintiff broadly alleges that there is mold, mildew, and asbestos at SCI Huntingdon and that he is breathing these conditions in every day. (Doc. No. 35 at 10, 20, 23.) Plaintiff also alleges that he "submitted several request slip[s] to the Administration[,]" but that "know [sic] one is listening let alone doing anything about it[.]" (Id. at 10.) As a result of these conditions, Plaintiff claims that he has been "using [his] asthma pump more then [he] should." (Id. at 23.)

Ultimately, the Court finds that Plaintiff has not plausibly alleged a deprivation of the Eighth Amendment based upon the conditions of his confinement. Even if Plaintiff's allegations are true—that there is mold, mildew, and asbestos at the prison, the Court still finds that Plaintiff's amended complaint does not sufficiently allege that any of the named Defendants acted with deliberate indifference—i.e., that they were both aware of an excessive risk of harm to Plaintiff, which accompanied these various conditions at the prison, but that they disregarded that risk. See Farmer, 511 U.S. at 837 (holding that a "prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to

24

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). To the extent that Plaintiff alleges that he submitted request slips to the administration at SCI Huntingdon, the Court notes that Plaintiff's amended complaint fails to allege when he sent those request slips, to whom he addressed those request slips, or what he wrote in those request slips. Accordingly, for all of these reasons, the Court concludes that Plaintiff's amended complaint fails to state an Eighth Amendment conditions-of-confinement claim upon which relief can be granted and, as such, this claim will be dismissed.

### b. Medical Care

In the amended complaint, Plaintiff appears to be asserting that Defendants Hobble and Cousins failed to provide him with adequate medical care in violation of the Eighth Amendment. (Doc. No. 35 at 4-8.) In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials violate the Eighth Amendment "when they are deliberately indifferent to an inmate's serious medical need." See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citing Estelle, 429 U.S. at 106).

"[T]he concept of a serious medical need, as developed in Estelle, has two components, one relating to the consequences of a failure to treat and one relating to

the obviousness of those consequences."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" See Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." See Rouse, 182 F.3d at 197 (citation omitted).

The Court now turns to the allegations that have been asserted against Defendants Hobble and Cousins in the amended complaint.

### i.    Defendant Hobble

In the amended complaint, Plaintiff asserts the following allegations against Defendant Hobble: on August 8, 2020, after Plaintiff received his medication from Defendant Hobble during "sick call," he proceeded to walk away when she and six (6) unidentified correctional officers stopped him and stated that he "must take [his] meds in front of [them]" (Doc. No. 35 at 7); Plaintiff explained that he was "just getting some water" and that "they make [him] sleepy" so he was "taking them, [then] going to [his] cell" (id.); one of the correctional officers reached for his pepper spray, which caused Plaintiff to "step back [and] drop the meds on the desk[,]" and he told Defendant Hobble that he was "refus[ing] to take [his] meds" (id.); and, finally, Plaintiff was subsequently told that Defendant Hobble had accused him of throwing medication at her (id. at 4, 8).

The Court, having reviewed these allegations, finds that Plaintiff has not sufficiently alleged that Defendant Hobble was deliberately indifferent to his medical needs.  From what the Court can discern, Plaintiff's amended complaint alleges only that Defendant Hobble accused him of throwing medication at her. There are no allegations, however, that Defendant Hobble was deliberately indifferent to his medical needs—i.e., that she actually knew of and disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be

27

drawn that an excessive risk of harm exists, and the prison official must also draw that inference). Thus, the Court finds that Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted against Defendant Hobble. As such, Plaintiff's Eighth Amendment claim against this Defendant will be dismissed.

### ii.    Defendant Cousins

In the amended complaint, Plaintiff asserts the following allegations against Defendant Cousins: on August 10, 2020, Defendant Cousins informed him that she would no longer be giving him his psychiatry medication because Defendant Hobble accused him of throwing medication at her (id. at 4, 8); during a meeting on September 2, 2020, Plaintiff expressed to Defendant Cousins that there are "side effects as well as withdrawal symptoms" when "dealing with Trasadone [sic] medication[,]" but that she did not want to hear it and stated that there are no such side effects (id.); and, finally, Plaintiff "tried to plead with her about side effects" and that she must "start weaning a person off slowly when . . . they [have] been taking meds for years" (id. at 8).

Unlike the allegations asserted against Defendant Hobble, the Court finds that the allegations asserted against Defendant Cousins are—at this initial stage of the litigation—sufficient to plausibly state that Defendant Cousins was deliberately indifferent to Plaintiff's serious medical needs. More specifically, when viewing the amended complaint in the light most favorable to Plaintiff, it alleges that: (a) he has

serious medical needs pertaining to his bipolar II disorder, depression, anxiety, and insomnia for which he has been taking medication for years: (b) Defendant Cousins discontinued his medication for a non-medical reason (i.e., for Plaintiff, allegedly, throwing medication at Defendant Hobble); and (c) despite Plaintiff having subsequent conversations with Defendant Cousins, and pleading with her about the side effects of taking him off of his medication, she disregarded his pleas.  Thus, based upon these allegations, the Court finds that Plaintiff has stated an Eighth Amendment claim upon which relief can be granted against Defendant Cousins.[7]

### B.    Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.

---

[7]  In the original complaint, Plaintiff alleged similar allegations—i.e., that his medications were discontinued due to an assertion that he had thrown his medication at a nurse. (Doc. No. 1 at 6.)  In the original complaint, Plaintiff also alleged, however, that Defendants Cousins had merely "rejected [his] advice" and told Plaintiff that his medication does not have "side effects or withdrawal [symptoms]." (Id.)  As a result, in its January 5, 2023 Memorandum, the Court treated these allegations as demonstrating Plaintiff's disagreement with Defendant Cousins over the potential side effects of being taken off of his medication. (Doc. No. 28 at 26-27.)  Plaintiff's amended complaint has, albeit by the thinnest of margins, elevated his allegations from mere disagreement to deliberate indifference.  Additionally, the Court notes that in some of the request forms attached to the amended complaint, Plaintiff complains about getting back on his psychiatric medication. (Doc. No. 35 at 26, 28, 29.)

2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff any further leave to amend his claims would be futile.  On January 5, 2023, the Court issued a Memorandum and accompanying Order, explaining to Plaintiff, in great detail, why his claims failed to state a claim upon which relief could be granted. (Doc. Nos. 28, 29.)  The Court granted Plaintiff an opportunity to file an amended complaint in order to cure the deficiencies of his claims.  Plaintiff's amended

complaint has failed to do so.[8]  Thus, the Court will not grant him any further leave to amend his claims.  That said, the Court will permit him to proceed on his Eighth Amendment claim against Defendant Cousins.

## IV.    CONCLUSION

To conclude, the Court will partially dismiss Plaintiff's amended complaint (Doc. No. 35) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).  The Court will permit Plaintiff to proceed on his Eighth Amendment claim against Defendant Cousins.  An appropriate Order follows.


Dated: April 26, 2023                                    s/ Sylvia H. Rambo
                                                         SYLVIA H. RAMBO
                                                         United States District Judge

---

[8]  By way of example, the Court granted Plaintiff leave to amend his complaint in order to allege the personal involvement of Defendants. (Doc. No. 28 at 12-17, 28-29.) Plaintiff's amended complaint, however, has failed to allege the personal involvement of Defendants McCorkle, Davis, Kauffman, and Rivello.  (Doc. No. 35.) By way of further example, the Court granted Plaintiff leave to amend his First Amendment claim against Defendant Tucker (Doc. No. 28 at 19-20) and his Eighth Amendment claim against Defendant Hobble (id. at 21-23, 25-29) in order to state claims upon which relief can be granted.  Again, however, Plaintiff's amended complaint has failed to do so.  (Doc. No. 35.)