## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY MCGRIFF,

      Plaintiff,

      v.

MRS. COUSINS,

      Defendant.

CIVIL ACTION NO. 1:22-cv-01547

(SAPORITO, J.)

### MEMORANDUM

Defendant Jessica Tress[1] requests reconsideration of the Court's August 4, 2025, memorandum and order denying her motion for summary judgment. (Doc. 107). In the alternative, she requests that the Court certify an issue raised therein for interlocutory appeal. For the foregoing reasons, these requests will be denied, and the Court will attempt to obtain pro bono counsel to represent McGriff in this case.

I. RECONSIDERATION

A. Legal Standards

Tress's motion for reconsideration is necessarily brought pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *See Qazizadeh v.*

---

[1] The defendant's surname changed from Cousins to Tress while this case was pending.

*Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016). Under Rule 54(b), "[a]n order that does not dispose of every claim in an action 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Clark Distrib. Sys., Inc. v. ALG Direct, Inc.*, 12 F. Supp. 3d 702, 717 (M.D. Pa. 2014) (quoting Fed. R. Civ. P. 54(b)); *see also Qazizadeh*, 214 F. Supp. 3d at 295.

Reconsideration of interlocutory orders "may be had even if a movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issues the underlying order, or 'the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "Instead, the court may permit reconsideration whenever 'consonant with justice to do so.'" *Id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 412 F. Supp. 2d 630, 632 (M.D. Pa. 2007)); *see also Clark Distr. Sys.*, 12 F. Supp. 3d at 717 (citing *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973)). Nevertheless,

> [b]efore entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision. Moreover, whether involving a final or

> interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant. A reconsideration motion should not be used to try to get a second bite at the apple or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question.

*Qazizadeh*, 214 F. Supp. 3d at 295-96 (citations and internal quotation marks omitted).

### B. Factual Background

McGriff, a prisoner at SCI-Huntingdon with documented mental health issues[2], proceeds on an Eighth Amendment claim of "deliberate indifference to medical care" against Tress, a nurse practitioner who specializes in psychiatry at the prison. McGriff had been prescribed Trazodone prior to his incarceration, and it was routinely renewed at SCI-Huntingdon. In his complaint, McGriff alleged that prior to August 7, 2020, he received his daily dose of Trazodone in his cell, at night, because of COVID-19 protocols.

The summary judgment record indicated as follows: At

---

[2] McGriff contends that he suffers from "Bipolar 2," among other conditions; the prison medical staff initially diagnosed him with "unspecified depressive disorder," but later abandoned that diagnosis.

approximately 7:30 p.m. on August 7, McGriff was summoned to a "pill line," outside of his cell, to take his medication. McGriff objected because the medication made him drowsy and he wanted to take it in his cell at night. An argument ensued, and a nurse reported that McGriff threw the medication at her; McGriff contends that he declined the medication in a respectful manner. Tress, who was not present, was notified of the nurse's report and within minutes ordered that McGriff's prescription be "discontinued." At a meeting on August 13, McGriff and Tress argued about the August 7 incident. Tress described McGriff as "agitated, argumentative, and demanding" and warned him against "inappropriate behavior" toward staff. Ultimately, Tress found "no indication that [McGriff] needs to be [re]started on psychiatric medications [including Trazodone] at this time."

Over the following years, McGriff made repeated, albeit inconsistent requests for his medication to be restored, arguing that he had suffered withdrawal symptoms and was still suffering symptoms of anxiety and depression. Although he received some mental health care, largely in the form of instruction on "coping skills" and other non-medical "interventions," the psychiatry staff did not evaluate McGriff for

restoration of his medication, despite his repeated requests. The Court denied both parties' motions for summary judgment, finding that the evidence showed a genuine dispute of material fact as to whether Tress had cancelled the medication for a genuine medical reason, or as punishment for McGriff's "inappropriate behavior" towards staff.

### C. Discussion

Tress seeks reconsideration on two grounds. First, she claims that the Court "misunderstood" McGriff to contend that he had previously taken his medication at night in his own cell. Tress states that "[w]here the Court sources this argument . . . is unclear," but those are the allegations of McGriff's complaint, which the Court summarized in the memorandum. *See* (Doc. 101 at 2-3). To the extent Tress argues that McGriff's allegation should not be considered because the "source" of his argument is not in the evidentiary record[3], the question is not whether

---

[3] It was also apparent from Tress's notes of her discussions with McGriff, among other evidence, that McGriff believed he should be permitted to take his medication at night in his cell because he had done so before. *See, e.g.*, (Doc. 86 at 39 ("I have to take it to my cell and take it cause I pass out when I take it."); 43 ("I take a large dose of medication at night. I'm not trying to take that much that early and then come down [to use the phone] . . . I'm not walking around here like a zombie.")).

the allegation itself is recited in the record but whether the evidence supports the allegation. The memorandum explained how the medical notes plausibly supported McGriff's allegations about the prior medication protocols. *See* (Doc. 101 at 16-17).[4] Moreover, the dispute about the protocols prior to August 7 is not dispositive, because the ultimate question is whether Tress cancelled McGriff's medication after August 7 for a non-medical reason.

Next, Tress objects that the Court misunderstood her rationale for cancelling the medication. In her statement of material facts, Tress described the rationale as follows:

> McGriff's medication was properly discontinued due to his attempt to circumvent the penological procedure for its administration, which required him to take any medication in view of nursing staff, the safety concerns related to potential medication hoarding by an inmate, and due to a lack of clinical indication that the medication was necessary for his treatment.

---

[4] Tress argues that McGriff's allegations are "blatantly contradicted by the record," but fails to address the contrary evidence identified in the memorandum, including the evidence that McGriff was essentially confined to his cell at the time and that the medication was prescribed to be taken "at bedtime." McGriff has now filed declarations of witness addressing the medication protocols, *see* (Doc. 119), but those are not considered because they were not in the summary judgment record.

(Doc. 86 at 9, ¶ 59 (citing Tress Aff. ¶ 18)). Tress contends that while the Court treated this as "separate bases for one decision," Tress in fact made two "separate, related" decisions: an initial, temporary cancellation on August 7 based on the alleged attempt to hoard medication, and then a subsequent review "rendering that cancellation permanent." Although plausible, that is not the only reasonable reading of the record[5], so Tress was not entitled to that inference in seeking summary judgment. Moreover, Tress's clarification would not have changed the result of the motion, because her rationales ("hoarding" and lack of necessity for the medication) did not fully align with the record, regardless of when they were invoked. *See* (Doc. 101 at 15-19).

Tress argues that the Court's analysis constitutes improper "second-guessing [of] the propriety or adequacy of a particular course of treatment." (Doc. 108 at 9 (citations omitted)). The analysis was not

---

[5] The medical staff's August 7 "administrative notes" stated that Tress ordered the medication to be discontinued, with no clear indication that the decision was temporary. *See* (Doc. 86 at 131). Further, Tress's own notes of the August 13 meeting stated: "There is no indication that [McGriff] needs to be *started* on psychiatric medications at this time" (*Id.* at 43 (emphasis added)), which cuts against the inference that the prior cancellation was intended to be temporary.

whether a particular course of treatment could be justified, but whether Tress discontinued Trazodone for a non-medical reason. *See* (Doc. 101 at 14-15); *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017) ("A delay or denial of medical treatment claim must be approached differently than an adequacy of care claim . . . All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors.").

As explained in the memorandum, the record did not clearly resolve that question in either party's favor. Given that McGriff's medication had been continually renewed in prior mental health appointments, Tress did not plausibly explain why another review "suddenly compelled the conclusion that he no longer needed medication." *See* (Doc. 101 at 17-18). Tress points to evidence of her "consideration of . . . [McGriff's] past treatment as no longer necessary," but her descriptions of that alleged rationale were internally contradictory and did not meaningfully explain the decision.[6] A juror could reasonably find either that this was

---

[6] Tress initially told McGriff that Trazodone was inappropriate because the DOC does not prescribe psychiatric medication for insomnia, but she later conceded that the medical staff had been prescribing Trazodone "to aid his sleep," and that the medication was "appropriately
*(continued on next page)*

legitimate medical judgment, or that Tress cancelled McGriff's prescription for a non-medical reason. Thus, Tress was not entitled to summary judgment.

## II.  CERTIFICATION FOR APPEAL

In the alternative, Tress requests that the order be certified for interlocutory appeal on the issue of whether the Court properly applied Local Rule 56.1. Generally, only a "final decision" of the district court is appealable to the courts of appeals, but an interlocutory (i.e., non-final) order can be appealed under the following circumstances:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal

---

administered and adjusted" during this time. *See* (Doc. 86, ¶¶ 18, 58; Tress Aff. ¶¶ 16, 17). It remains unclear why a long-term prescription that had been "appropriately administered" prior to August 7 was "no longer necessary" after that date. Tress's explanations do recite some of McGriff's medication history, but they shed no light on this question. *See, e.g.*, (Doc. 86, ¶ 28) ("Tress reviewed McGriff's chart, finding that he entered SCI Huntingdon prescribed both trazodone and Benadryl, which was later discontinued and the trazodone increased; McGriff had been prescribed trazodone before incarceration and it was continued throughout due to his reports of insomnia and anxiety, although he was not receptive to trials of any other psychiatric medications; accordingly, [Tress] discussed McGriff's care with nursing staff and discontinued his trazodone prescription.").

> from the order may materially advance the ultimate
> termination of the litigation, he shall so state in writing
> in such order. The Court of Appeals which would have
> jurisdiction of an appeal of such action may thereupon,
> in its discretion, permit an appeal to be taken . . .

28 U.S.C. § 1292(b). Thus, to warrant a certificate of appealability, a

district court's order must "(1) involve a 'controlling question of law', (2)

offer 'substantial grounds for difference of opinion' as to its correctness,

and (3) if immediately appealed, 'materially advance the ultimate

termination of the litigation.'" *Consumer Fin. Prot. Bureau v. Navient*

*Corp.*, 522 F. Supp. 3d 107, 113 (M.D. Pa. 2021) (citations omitted).

In this case, Tress argues that by operation of Local Rule 56.1, all

of her factual allegations should have been deemed admitted, and

summary judgment granted, for McGriff's failure to file a compliant

counter-statement of material facts. In relevant part, the Local Rule

provides:

> The papers opposing a motion for summary judgment
> shall include a separate, short and concise statement
> of the material facts, responding to the numbered
> paragraphs set forth in the statement required in the
> foregoing paragraph, as to which it is contended that
> there exists a genuine issue to be tried.
>
> Statements of material facts in support of, or in
> opposition to, a motion shall include references to the
> parts of the record that support the statements.

> All material facts set forth in the statement required to
> be served by the moving party will be deemed to be
> admitted unless controverted by the statement
> required to be served by the opposing party.

M.D. Pa. L.R. 56.1. "Given the important purposes served by Local Rule 56.1 in providing structure and coherence to summary judgment presentations, this Court has broad discretion in addressing the failure of parties to fully comply with this rule." *Kabler v. United Food & Commercial Workers Union, Loc. 1776*, No. 1:19-CV-395, 2019 WL 5721905, at *2 (M.D. Pa. Nov. 5, 2019) (citations omitted). Moreover, a district court has discretion "to waive a requirement of its local rules in appropriate circumstances." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000).

In opposing Tress's motion, McGriff did not file a separate response to Tress's statement of material facts. Instead, he filed a single "response in opposition" to Tress's brief and statement of facts, with evidence attached. *See* (Doc. 96). The Court reviewed this and other evidence McGriff submitted, including with his own motion for summary judgment. Where McGriff did not offer competent evidence to demonstrate a genuine dispute of material fact, Tress's fact statements were deemed admitted. *See* (Doc. 101 at 5 n.5) (citing Fed. R. Civ. P.

56(c)(1), (c)(3), (e)(2)).

For the reasons described in the memorandum, the record did not support summary judgment, and to grant it on procedural grounds would have been an "unjust result." *Eleven Vehicles*, 200 F.3d at 215 (quoting *Somlyo v. J. Lu–Rob Enter., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991)). Tress describes various courts' differing approaches to violations of Rule 56.1, but those differences do not demonstrate a "controlling question of law," given the Court's power to waive the requirement entirely. Moreover, an immediate interlocutory appeal on the discretionary application of a local civil rule appears more likely to delay rather than materially advance the ultimate termination of this litigation, which is already more than three years old.

## III.  CONCLUSION

Accordingly, Tress's motion for reconsideration will be denied. Given McGriff's *in forma pauperis* status (Doc. 29), the medical issues implicated in this case, and the potential need for credibility determinations at trial, the Court finds that the case has arguable merit in fact and law and McGriff's presentation of these issues would be significantly enhanced by the appointment of counsel. *See* 28 U.S.C.

§ 1915(e)(1); *Montgomery v. Pinchak*, 294 F.3d 492, 501-505 (3d Cir. 2002). Therefore, the Court will provisionally grant McGriff's requests for appointment of counsel, and the case will be stayed while the Court attempts to recruit counsel. However, if the Court is unable to recruit counsel, McGriff will be required to proceed *pro se*.

Dated: October 30, 2025                    *s/Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States District Judge